Wanamaker, J.,
concurring. I heartily concur in the judgment in this case, and, in the main, in the opinion, save and except what is said concerning, The Cleveland Telephone Company v. The City of Cleveland, 98 Ohio St., 358. The whole comment of the opinion touching this case is as follows :
“The controversy was with reference to the authority of the city to fix rates for service furnished by the company. The company had in former years entered the city and constructed the line pursuant to statutes then in force. The line was the property of the company. ' No part of the expense of construction or maintenance was paid by the city. The city had no proprietary interest in the property or the enterprise; and had no duty and was subject to no liabilítv in connection with its operation.”
By the clearest implication this reference to the telephone case approves that judgment and the grounds upon which the same is based.
*393 I desire here and now to emphasize my vigorous dissent from that judgment and the grounds thereof as stated in the opinion, or upon any other grounds.
The first line quoted above would indicate that the telephone case was distinguishable from this case because in the telephone case the city sought “to fix rates for service furnished by the company.”
Here is a clear admission that the city has not the right and power under the constitution, as discussed in the telephone ca§e, to fix such rates. If the city has no right to fix such rates as to telephones, it has no right under the constitution to fix such rates as to street car service, water service, gas, light, heat and power service, or the rate for any other product or service furnished by any public utility. That doctrine with one sweep shears the city of all its police power in the first half of Section 3.
Is it intended by this language, which seeks to distinguish the telephone case from the truck case, to hold, that, by reason of the fact that “The [telephone] company had in former years entered the city and constructed the line pursuant to statutes then in force,” a company entering a city and seeking to construct lines pursuant to the statutes now in force would be subject to the city charter and not to the state statute? If the language has any significance at all this is the plain intendment of it, and yet no one would contend that under the constitution and laws of Ohio there could be such a distinction.
*394 Why insert the language “No part of the expense of construction or maintenance was paid by the city?” The same is true as to the truck. It is a private or proprietary interest. But both operate upon the streets.
Neither is the telephone company case distinguishable from this truck case for the reason that the telephone company’s lines extend partly without the city.
The telephone company was not wholly within the corporate limits. of the city. Its lines did extend outside of the corporate limits, but so did the street extend outside of the corporate limits, and many other streets of the city of Cleveland extended outside of the corporate limits. But why should one street be regulated within the city by a charter and another street regulated within the city by a statute? It is incredible. All streets within the city must be subject to the same power, regulated by the same authority, the same police power; by the city or state. You cannot make any such technical distinction that is practicable and reasonable.
In the telephone case the subject-matter of regulation was the street of the city of Cleveland — its use and occupation by the telephone company and the “terms and conditions” of such use.
'In the truck case we have the same identical question, the use and occupation of the streets of the city of Cleveland by a truck; and the same police power that fixes the terms and conditions, including fares' for the telephone, must fix the “terms and conditions” for the truck. The telephone is a public utility in fact and in law. The truck is a public *395 utility in fact, and may at any time the legislature sees fit, under proper circumstances, be made a public utility in law. They are both transportation agencies. The telephone company by steel wire transports messages. Froelich by the use of a steel truck transports merchandise. They both use t-he same city street. If the Froelich case relating to steel trucks upon the streets of Cleveland is rightly decided, then the telephone case with reference to steel wires on the streets of Cleveland was wrongly decided. If upon the contrary the Cleveland telephone case was rightly decided, then this case is wrongly decided.
True in the telephone case the question involved was the size of the fare, while in the truck case the question involved was the size of the load, but in both cases there was involved the regulation of a practical public utility in the street. The use and occupation of the street and the terms and conditions under which such use and occupation should be exercised involve the clear and practical exercise of police power contrary to a state statute. As to the truck we hold that the charter controls. As to the telephone we hold that the charter does not control, but that the statute controls. The judgments are entirely inconsistent, clearly repugnant, and wholly irreconcilable by any fair process of reasoning.
It is regretted that in this, truck case nothing whatsoever is said in the syllabus about police power, and no attempt is made in the syllabus to even refer to the telephone case or the doctrine therein announced. This cannot fail to impress *396 the bar and bench of Ohio as an evasion or makeshift from the principles announced in the syllabus of the telephone case. The dootrine in that case involves two propositions. The first proposition is contained in the first paragraph of the syllabus as follows:
“The regulation of rates for services rendered or commodity furnished by a public utility is an exercise of police power.”
That proposition is primary and elementary, and, so far as I am able to observe, it is the universal doctrine of all of our courts, state and federal.
From the remaining paragraphs of the syllabus, reenforced by the opinion, the second proposition involved arises, to-wit, that such police power is a state power; at least, where the state exercises such police power the municipality is denied the right to exercise such police power in any manner or in any wise conflicting with the exercise of that police power by the state.
Of course it must be conceded on all hands that the exercise of .governmental power by the city of Cleveland in the regulation of the load that trucks may carry over its paved streets is a police power, and it must likewise be conceded that in this instance the exercise of that power by the city of Cleveland -is in clear conflict with the statute; that is to say, what the statute leaves lawful, a twelve ton load, the ordinance of the city makes unlawful. By indirection and clear implication from the judgment in the truck case the city charter is declared to be the paramount law, though the city has here exercised the identical police power that it exer *397 cised in the telephone case, which, in that case, was held to be an unconstitutional exercise of the police power by the city.
In this case, as in other home-rule cases, this court has become greatly confused because it has not undertaken in any wise to define the two branches of Section 3, Article XVIII, known as the home-rule amendment. The whole section reads:
(Part One) “Municipalities shall have authority to exercise all powers of local self-government and”
(Part Two) “to'adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws.”
Now, the first part evidently refers to all municipal powers in all municipal affairs, else it would not use the term “local self-government,” and, after all, “municipal affairs” was the particular subject-matter under consideration before the constitutional convention in this section of the article. Therefore, when its members granted “all powers of local self-government” they clearly must have intended to grant whatever police power was necessary for sufficient and serviceable self-government. To argue that they did not intend to grant police power and yet intended to grant “all powers of local self-government” is an utter absurdity, because even a schoolboy who has lived in a city and studied the first elementary textbook on civil government knows that without police power a government has no more vitality than a dirty dishrag.
*398 Police power is the very backbone, heart and head of all government, and especially municipal government. And yet this court held in the telephone case that by virtue of Part Two, above, police power was taken from the city, or rather was not intended to be granted to the city — but was reserved for the state entirely and exclusively — save and except to supplement state legislation.
If Part One stood alone it would be difficult to read any doubt into it so far as its scope and extent were concerned. The language is as general as the English language can be made.
Now, one thing is quite evident, and that is that by the use of the word “and” after the words “local self-government” the constitutional convention and the people adopting the constitution intended to “add” some power. If “and” means anything, it means to “add” to and not to “subtract” from.
What was the power they intended to add? It could not have been municipal power, because that had been .fully and wholly granted in Part One. It, therefore, must have been state power, and when they provided for additional state power they wisely provided that it should conform to the exercise of the state power by the state. The difficulty here arises from the fact that the court forgot or ignored the duality of every city or village in the state. That duality is as follows:
1. It is a municipal community, incorporated as such, organized as such, with its own peculiar municipal affairs, its peculiar conditions, social, industrial, sanitary, and the like, as to which Judge Shauck, speaking for the court in the Lynch case, *399 supra, clearly and convincingly held that the city, upon the adoption of a charter was immune as to general laws.
Now, that immunity does not exist in Part Two, because Part Two provides for uniformity; that is to say, when laws are to be enacted for the municipality as a mere political subdivision of the state, upon matters that are inherently general and uniform throughout the state, that are inherently of the same nature and operating effect, such as obtain in any other political subdivision of the state, as obtain within or without a municipality, but in no wise peculiar to any particular municipality, then as to such general conditions legislation should be by general laws. In short, therefore, we may say that in the exercise of municipal powers in municipal affairs the municipality shall enjoy immunity.
2. In the exercise of state powers upon general and uniform conditions throughout the state, uniformity throughout the state shall be the rule, and the municipality shall exercise its power with a view to preserving that uniformity as to state affairs.
The question then that should be primary and paramount in each case is this: Is it a state affair or is it a municipal affair ? If it is a municipal affair, it comes under Part One. If it is a state affair, it comes under Part Two.
I held in the telephone case that the regulation of affairs within the city between the telephone company and the residents of the city was a purely local or .municipal affair, and, therefore, subject to Part *400 One, and I likewise hold that the regulation of the truck upon the streets of the city of Cleveland, within the city, is also a purely local and municipal affair and as such is governed by Part One and not by Part Two of said Section 3.
Until this distinction is recognized and applied, the lines between municipal jurisdiction, upon the one side, and state jurisdiction, upon the other, under the home-rule amendment, will remain cloudy and confused, so that neither lawyer nor layman can determine the meaning of this amendment as practically applied to the affairs of municipal government.
Surely it is to be hoped that the logical effect of the judgments in the telephone case and this truck case shall not reduce the municipal power of the city in municipal affairs to the minimum of control of its streets to the extent of speed or load, but deny control of the streets to the extent of regulating tolls, fares and rates for the products and service of the public utilities that are peculiarly and inherently municipal in everything but ownership.
It is well to remember that there, was once an issue in this country known as “taxation without representation.” It was fought out and won, and has never been seriously questioned since, and today, universally, local authorities are given the fundamental right to determine their own taxes, even though in some states the people have vested in the legislature the right to fix limits as to taxation, but not to levy or assess taxes.
*401 By parity of reason and all the laws of logic it would seem that the people of the local communities should likewise have the right to determine how much they shall be taxed in the shape of rates, fares, tolls, and the like, for the service and product of public utility corporations.
The principle is home rule in fixing the taxes, and it should be home rule in fixing the fares. Democracy demands the one as well as the other, and the constitution of Ohio provides for both.